**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4079**

UNITED STATES OF AMERICA,

                   Plaintiff - Appellee,

         v.

GABRIEL TORRES GUTIERREZ,

                   Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, District Judge.  (1:11-cr-00102-MR-DLH-1)

Argued:  March 20, 2014            Decided:  April 30, 2014

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Henderson Hill, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gabriel Torres Gutierrez appeals his 78-month sentence for illegal reentry. He contends that the district court committed plain error in calculating his Sentencing Guidelines range and that his sentence was substantively unreasonable. For the reasons that follow, we affirm.

I.

Born in Mexico in 1966, Gutierrez unlawfully entered the United States sometime before 1987 and settled in Los Angeles. He amassed a substantial criminal record in Southern California. In less than ten years he was convicted of shooting at an inhabited dwelling or occupied vehicle, possession of a controlled substance, indecent exposure, and disorderly conduct. He moved to North Carolina in the 1990s, but returned to Mexico sometime after he was convicted of driving without a license in 1998.

On July 11, 1999, border officials apprehended Gutierrez as he attempted to reenter the United States using a forged birth certificate. Immigration officials removed him to Mexico the same day. After illegally entering the country later that year with the help of a "coyote," Gutierrez returned to North Carolina, where police apprehended him in 2000 for possession of marijuana with intent to sell. He was again deported to Mexico.

2

Less than a year later, in 2002, border officials apprehended Gutierrez running near the Rio Grande River in Texas. After admitting that he was in the country illegally, Gutierrez was acquitted of illegal reentry and was deported yet again. Four years later, in 2006, authorities arrested Gutierrez for theft and deported him to Mexico. In 2007, immigration officials apprehended him as he tried once more to cross the border, this time without identification. A court convicted him of illegal reentry and sentenced him to 12 months' imprisonment. After serving his sentence, Gutierrez was deported to Mexico in 2008. In 2010, Gutierrez illegally returned to North Carolina one last time, where police arrested him for obtaining property by false pretenses and obstruction of justice. This final apprehension in the United States marked Gutierrez's sixth illegal return to the United States.

Gutierrez pleaded guilty to illegal reentry by an unlawful alien, 8 U.S.C. §§ 1326(a) & (b)(2), before a federal magistrate judge on January 18, 2012. Prior to the sentencing hearing, Gutierrez's probation officer drafted a presentence report. In calculating Gutierrez's offense level, the probation officer applied a 12-point sentence enhancement under Section 2L1.2 of the U.S. Sentencing Guidelines on the ground that Gutierrez had previously been deported after committing a "crime of violence." The probation officer concluded that Gutierrez's 1987 California

3

conviction for "shooting at an inhabited dwelling or occupied vehicle," Cal. Penal Code § 246, qualified as a crime of violence under the Guidelines. This enhancement yielded a total offense level of 17, resulting in a recommended Guidelines range of 37-46 months' imprisonment. The probation officer noted that there "appears to be no circumstance or combination of circumstances that warrant a departure from the prescribed sentencing guidelines."

Gutierrez did not object to the imposition of the 12-point enhancement. Rather, at the sentencing hearing, Gutierrez's counsel argued that Gutierrez deserved a sentence "in the low to mid-range of the guidelines" given that he returned to the United States only after being attacked in Mexico for refusing to participate in the Mexican drug trade. The Government, by contrast, asked for a sentence "at the upper end of the guideline range" given Gutierrez's "history of recidivism" and given that he had never "really ever received a significant sentence" for his past crimes.

Gutierrez himself also provided a statement at the hearing. He acknowledged that he made "poor decisions," but stated that he had returned to the United States "with the intention of working honestly as God instructs." He explained that he returned to the United States only after members of "organized crime in [his] country" beat him into a three-week coma.

4

After considering the Section 3553(a) factors, the district court sentenced Gutierrez to 78 months' imprisonment -- an upward variance of 30 months from the high end of the Guidelines range. The court explained that it was not imposing the variance due to "the seriousness of the offense" -- the court noted that Guidelines already accounted for that factor. Rather, the court concluded that the variance was "necessary to promote respect for the law and to afford adequate deterrence to criminal conduct, not just by this defendant but by others." The court emphasized Gutierrez's six illegal reentries, and noted that "with almost every one of these returns there [were] additional crimes on the criminal history." Moreover, the court pointed out that Gutierrez had been punished leniently after previous illegal reentries -- receiving the "benefit of fast track treatment" so as to avoid jail time with respect to some crimes. Although the court expressed "substantial sympathy" regarding Gutierrez's violent treatment in Mexico, the court noted that this mistreatment did not excuse his repeated violations of United States law. The court concluded that Gutierrez's conduct amounted to "a long-term pattern of not only disrespect for the law but disregard for the law."

Gutierrez's counsel argued that the Guidelines already accounted for Gutierrez's history of recidivism and that a variance was therefore improper. Counsel also contended that he

5

had not been "given adequate notice that the Court intended to upwardly depart or vary," and therefore that he lacked a sufficient opportunity to respond to the court's concerns. The court rejected both arguments. Gutierrez timely noted this appeal.

We review a criminal sentence for procedural and substantive reasonableness. United States v. Gall, 552 U.S. 38, 51 (2007). We first determine whether the district court committed a significant procedural error such as miscalculating the applicable Guidelines range. Id. If no procedural error occurred, we next determine whether the sentence imposed was nevertheless substantively unreasonable, applying an abuse-of-discretion standard. Id. Gutierrez contends that the district court committed both procedural and substantive error in calculating his sentence. We address each contention in turn.


II.

Gutierrez initially asserts that the district court committed procedural error by imposing a 12-point crime-of-violence enhancement.

The Guidelines subject a defendant convicted of illegal reentry to a 12-point (or 16-point) sentence enhancement if he was previously deported after committing a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Guidelines commentary

6

defines a crime of violence, in relevant part, as any "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. cmt. n.1(B)(iii). We refer to this Guidelines provision as the "force clause." The district court imposed a 12-point enhancement on the ground that Gutierrez's California conviction for shooting at an inhabited dwelling or occupied vehicle qualified as a "crime of violence" under the force clause. Gutierrez did not object to the enhancement. Consequently, as he recognizes, our only review is for plain error.

A party asserting plain error must show (1) that an error occurred, (2) that the error was plain, and (3) that the error affected substantial rights. United States v. Slade, 631 F.3d 185, 190 (4th Cir. 2011). If these three conditions are met, we correct the error only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 192. We are admonished to resist the "reflexive inclination" to reverse unpreserved error. Puckett v. United States, 556 U.S. 129, 134 (2009) (citation omitted).

Gutierrez claims that the district court erred by treating his California conviction as a crime of violence. He points to Fourth Circuit precedent holding that crimes involving a mens rea of mere recklessness cannot qualify as crimes of violence

7

under the force clause.  See Garcia v. Gonzalez, 455 F.3d 465, 468 (4th Cir. 2006); Bejarano-Urrutia v. Gonzalez, 413 F.3d 444, 447 (4th Cir. 2005).  And he contends that the California crime of shooting at an inhabited dwelling requires mere recklessness rather than purposeful conduct.  Accordingly, he urges us to agree with the Ninth Circuit that a conviction under this statute does not constitute a crime of violence.  See United States v. Narvaez-Gomez, 489 F.3d 970, 977 (9th Cir. 2007).

We need not resolve whether the district court erred by treating Gutierrez's California conviction as a crime of violence, however, because, even if it did err, Gutierrez cannot establish that the error was plain.

An error is plain "if the settled law of the Supreme Court or this circuit establishes that an error has occurred."  United States v. Carthorne, 726 F.3d 503, 516 (citation omitted).  In the absence of binding precedent, "decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain."  United States v. Rouse, 362 F.3d 256, 263 (4th Cir. 2004) (citation omitted).  But if our court has yet to speak directly on a legal issue and other circuits are split, "a district court does not commit plain error by following the reasoning of another circuit."  United States v. Strieper, 666 F.3d 288, 295 (4th Cir. 2012).

The combination of several facts requires the conclusion that any error here was not plain. First, no case from this court or the Supreme Court provides that the California statute at issue does not qualify as a crime of violence. Thus, to conclude that Gutierrez's California conviction should not yield a sentence enhancement, the district court would have been required to delve into an unsettled area of California law. This absence of dispositive federal precedent suggests that any error by the district court was not obvious.

Moreover, cases from other circuits create an arguable circuit split on the question presented here. The Seventh Circuit has held that an Illinois conviction for aggravated discharge of a firearm -- a crime similar to the California crime committed by Gutierrez -- does constitute a crime of violence under § 2L1.2(b)(1)(A). See United States v. Curtis, 645 F.3d 937, 941 (7th Cir. 2011). But the Ninth Circuit has held to the contrary. See Narvaez-Gomez, 489 F.3d at 977. Gutierrez posits that Curtis is distinguishable from Narvaez-Gomez because the Illinois statute required "intentional or knowing" conduct, Curtis, 645 F.3d at 942, while the California crime "may result from purely reckless conduct," Narvaez-Gomez, 489 F.3d at 977. But even assuming that the two cases, upon close analysis, may be so distinguished, the cases at least suggest a disagreement among the circuits. Moreover, prior to

9

Narvaez-Gomez, the Ninth Circuit itself had held that the California statute at issue here categorically constituted a crime of violence. See United States v. Lopez-Torres, 443 F.3d 1182, 1185 (9th Cir. 2006), abrogated by Fernandez-Ruiz v. Gonzales, 466 F.3d 1121 (9th Cir. 2006) (en banc). The apparently inconsistent case law on this question undermines Gutierrez's contention that the district court plainly erred.

Additionally, the cases from this court establishing that crimes of violence cannot rest on reckless conduct arose in the immigration context rather than the context of the Sentencing Guidelines. See Garcia, 455 F.3d at 465; Bejarano-Urrutia, 413 F.3d at 444. Although we interpret force clauses in different statutes identically for purposes of "ascertaining whether a prior conviction is a crime of violence," United States v. Vann, 660 F.3d 771, 773 n.2 (4th Cir. 2011) (en banc), the fact remains that, in the Guidelines context, we have never held that a crime involving mere recklessness cannot qualify as a crime of violence -- further suggesting that any error was not plain.

Taken together, these facts cloud the proper resolution of this case with enough uncertainty that we cannot hold that the district court plainly erred in imposing the 12-point enhancement. Accordingly, we must reject Gutierrez's contention that the district court imposed a sentence that was plainly procedurally unreasonable.

III.

Gutierrez's challenge to the substantive reasonableness of his sentence fares no better. In reviewing a sentence for substantive reasonableness, we take "into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall, 552 U.S. at 51. In reviewing an above-Guidelines sentence, we "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 50. A major departure should be supported by a more significant justification than a minor one. Id. But an appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. at 51.

After considering the Section 3553(a) factors, the district court imposed a 78-month sentence, finding this sentence "necessary to promote respect for the law and to afford adequate deterrence to criminal conduct, not just by this defendant but by others." The court noted Gutierrez's history of six illegal reentries, and emphasized that almost each reentry was accompanied by new violations of the law -- including "firing a firearm into an occupied dwelling," "drug convictions," "a conviction for indecent exposure," and "theft." The court pointed out that Gutierrez received lenient treatment with

11

respect to many of his past crimes, but nevertheless continued to commit new ones. After expressing sympathy regarding the violence Gutierrez endured in Mexico, the court admonished that this violence did not excuse Gutierrez's repeated violations of United States law. The court concluded that Gutierrez's "pattern of being deported and returning, deported and returning, deported and returning, and with almost every one of these returns there being additional crimes on the criminal history," warranted a 30-month upward variance.

Gutierrez claims that the district court's reasoning does not justify a 76-month sentence. He contends that the Guidelines already account for his criminal history, and that the upward variance therefore double-counted his past crimes. We cannot agree. Gutierrez illegally returned to the United States six times. Although the Guidelines accounted for some of his criminal history, he was, as he concedes, deported several times without facing criminal charges. The district court reasonably could conclude that 30 additional months were necessary to deter Gutierrez from reentering and violating the law again. The court acted within its discretion in sentencing

12

Gutierrez to 78 months' imprisonment; the sentence was not substantively unreasonable.[*]

IV.

For these reasons, the judgment of the district court is

AFFIRMED.

_____

[*] Gutierrez also claims that the district court erred by failing to provide him with advance notice of its intent to vary upwards from the PSR's recommended Guidelines range. But Gutierrez concedes that Irizarry v. United States, 553 U.S. 708, 716 (2008), forecloses this argument.